IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| NEW VIRGINIA MAJORITY EDUCATION FUND; VIRGINIA CIVIC ENGAGEMENT TABLE; MICHAEL KERN; and KATHY KERN,<br><br>Plaintiffs,<br><br>v.<br><br>VIRGINIA DEPARTMENT OF ELECTIONS; VIRGINIA STATE BOARD OF ELECTIONS; EDGARDO CORTES, in his official capacity as Commissioner of the Virginia Department of Elections; JAMES B. ALCORN, in his official capacity as Chairman of the State Board of Elections; CLARA BELLE WHEELER, in her official capacity as Vice Chair of the Board; and SINGLETON V. MCALLISTER, in her official capacity as Secretary of the Board,<br><br>Defendants. | Civil Action No. _____<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION** |

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs New Virginia Majority Education Fund ("NVMEF"), Virginia Civic Engagement Table ("VCET"), Michael Kern, and Kathy Kern submit this memorandum of law in support of their emergency motion for a preliminary injunction requiring Defendants, the Virginia Department of Elections and its Commissioner, and the State Board of Elections and its Chairman, Vice Chair, and Secretary, to take all action necessary to reopen and extend the October 17, 2016 voter registration deadline in Virginia for at least an additional 72 hours after this Court rules, and to take all action necessary to provide notice to the public of the reopening and extension. Defendants' refusal to extend the deadline—notwithstanding the inability of many Virginians to register to vote because Defendants' own online voter registration website malfunctioned and then crashed in the final

1

days—violates the fundamental right to vote under the First and Fourteenth Amendments to the United States Constitution, the Equal Protection Clause, and the Due Process Clause.

## INTRODUCTION

"There is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1435 (2014) (plurality opinion). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). A preliminary injunction is needed here to prevent the disenfranchisement of thousands of eligible prospective voters in Virginia, through no fault of their own.

Under Virginia law, the voter registration deadline for Virginia voters was 11:59 p.m. on Monday, October 17, 2016. Eligible citizens who failed to register by then cannot cast a ballot that will count in the upcoming November 8, 2016 general election. Every election cycle, thousands upon thousands of voters register online at Defendants' website. And many of them do so in the days leading up to the registration deadline. But in the lead-up to this year's deadline, the website malfunctioned and then crashed altogether, preventing thousands of Virginians from registering to vote before the deadline.

Defendants acknowledge that their website broke in the critical lead-up to the registration deadline, preventing Virginians from registering online. Defendants nonetheless refuse to extend the registration deadline to protect the voting rights of citizens who attempted to register online before the deadline but were unable to do so, through no fault of their own.

Absent relief from this Court, many eligible prospective voters who attempted to register within the time that Virginia law permits, but were prevented from doing so by

Defendants' broken website, will be disenfranchised in the upcoming election, in violation of the First and Fourteenth Amendments to the United States Constitution.  This Court should grant a preliminary injunction requiring Defendants to reopen and extend the deadline, and to notify the public of the reopening and extension, so that Virginians can register and vote.

## STATEMENT OF FACTS

The deadline to register to vote in Virginia was Monday, October 17, 2016.  VA CODE ANN. § 24.2-416.  Virginia does not permit eligible citizens to register during the absentee voting period or on Election Day.  Accordingly, if an otherwise eligible citizen did not register by October 17, he or she will not be permitted to cast a ballot that counts in the upcoming election.

A significant number of Virginia residents register to vote in the days leading up to the registration deadline.  And many of them do so using the Department of Elections' online voter registration tool, at vote.elections.virginia.gov.  Plaintiff NVMEF, a non-profit organization that champions the voices of communities of color, women, working people, LGBTs, and youth, has sent volunteers and staff every day in the past few weeks to conduct voter registration drives, using both the online tool and paper forms.

In the critical run-up to the registration deadline, Defendants' website broke, causing Virginians to experience delays or outright inability to register online.  NVMEF and partner organizations began receiving notice from concerned voters having trouble using the online tool on October 15 and 16.  As the number of visitors to the site increased in the final days of voter registration, problems with the site became more and more common, culminating in the site crashing completely on October 17 during the final day of voter registration.  That afternoon, visitors to the site began receiving a "file not found" error message.  Defendant Cortés sent an email to voter registrars across Virginia stating that the online tool was experiencing a "surge in

activity" due to voting promotions by Facebook and Google that caught state officials by surprise. Graham Moomaw, *System crashes on final day of Virginia voter registration prompt civil rights group to call for extension*, RICHMOND TIMES DISPATCH, Oct. 18, 2016, *available at* www.richmond.com/news/virginia/article_7b15ab30-e35a-5722-86e1-849f5cd76f33.html. Cortés wrote that the Department would pursue "permanent solutions" after the election, but in the meantime state officials "are in a triage mode to get everyone through while limiting any negative impacts to your operations." *Id.*

Sometime on the afternoon of October 17, Defendant the Department of Elections posted a message to its Facebook page advising that its "online voter registration system is experiencing an unprecedented activity level that has caused it to slow down and sometimes be completely unresponsive." *See* https://www.facebook.com/VirginiaELECT. The message further stated that the Department was "quickly" making changes that would "temporarily disable the ability to look at your existing voter record or conduct other business on the site. You should see the changes to the website shortly." *Id.*

Despite these attempts to fix the problem, voters continued to receive the "file not found" error message, which continued to appear in response to attempts to use the website into the morning hours of October 18, 2016. Hundreds of comments on the Department's Facebook message report Virginians trying unsuccessfully to register using the online tool. By way of example, a few of the comments include: "still showing file not found"; "Still not working!"; "Still no luck"; "I have been trying for almost 6 hours here!!"; "not working"; "STILL 'FILE NOT FOUND'"; "File not found, same as everyone here"; "been trying for 12 hours now just to get into the site"; "Still trying, still nothing"; and "Failure of mass proportions." And perhaps most troubling of all, one comment simply states: "I give up." *See id.*

4

Plaintiffs Michael and Kathy Kern of Charlottesville, Virginia, are among the eligible prospective voters who tried unsuccessfully to register online in the 48 hours leading up to the registration deadline. Each of them "tried … to register multiple times on Sunday, October 16 and Monday, October 17 using the online system, but kept getting a 'file not found' message." Compl. ¶¶ 14, 15. Each "was unable to register to vote." *Id.*

Today, the online voter registration tool is no longer available. Instead, the website displays a message stating, "Registration Deadline Passed." The site further advises that "for most voters, this means that any applications submitted after this time will not be reviewed until after the November 8, 2016 election." *See* https://vote.elections.virginia.gov/Registration/CloseOfBook.

These technological problems with the online tool prevented thousands of Virginians from successfully completing online voter registration applications. Moomaw, *System crashes*, *supra*.

Defendants were aware that the number of visitors to the site was increasing in the final days of the voter registration period. In response to the increased volume, Defendants brought an additional server online on or about October 11—six days before the registration deadline— but the online tool continued to malfunction. Marissa Parra, *Virginia Voter Registration Website Crashes Due to Record Volume*, WSET ABC 13, Oct. 17, 2016, http://wset.com/news/local/virginias-online-voter-registration-website-crashes-due-to. Spikes in voter registration applicants during the final days of a registration cycle are common, especially in presidential election years such as this one.

For all practical purposes, voter registration opportunities were unavailable to many Virginians for much of the day and evening on October 17, 2016, the deadline to register.

On Tuesday, October 18, 2016, the Lawyers' Committee for Civil Rights Under Law sent a letter to Defendant Cortés, copying Defendants Alcorn, Wheeler and McAllister. Compl. Ex. A, Letter from Kristen Clarke to Defendants. The letter noted the website's failures and asked that the Department of Elections and State Board of Elections publicly announce, no later than 5 p.m., an extension to the voter registration deadline. *Id.*

At 4:16 p.m. on October 18, Defendant Cortés responded to the Lawyers' Committee letter and advised that Defendants would not voluntarily extend the voter registration deadline. Compl. Ex. B, Letter from Edgardo Cortés to Kristen Clarke. Defendant Cortés acknowledged the "technical problems experienced by [Virginia's] online voter registration portal on October 16 and 17," noting that the system "was unable to handle the overwhelming demand from voters." *Id.* He further acknowledged the "unprecedented activity levels" on the portal in the days before the registration deadline, and the "frustration experienced by voters" attempting to register through the broken online portal. *Id.* Defendant Cortés nevertheless stated that Defendants would not extend the registration deadline because "[t]here is no statutory provision in the Code of Virginia that allows for extending the voter registration deadline." *Id.*

## ARGUMENT

To obtain a preliminary injunction, a plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). Particularly in light of the fundamental constitutional rights at stake, these requirements are easily satisfied here.

**I.      Plaintiffs Are Likely To Prevail on the Merits**

      **A.      Defendants' Actions Severely Burden the Right to Vote Without Advancing any State Interest**

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17 (1964). State election laws that burden the fundamental right to vote are subject to searching scrutiny. As the Supreme Court explained in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), "[a] court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). When the restriction on the right to vote is "severe," the restriction "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992). But "[h]owever slight [the] burden may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality) (quoting *Norman*, 502 U.S. at 288-89).

If the October 17 registration deadline is not extended, thousands of Virginians will be disenfranchised entirely. These individuals attempted to register to vote during the period provided by Virginia law, in reliance on assurances from Defendants that the online registration system would be available under 11:59 p.m. on October 17, but are now disenfranchised. "[T]he basic truth [is] that even one disenfranchised voter—let alone several thousand—is too many[.]"

7

*League of Women Voters of N.C. v. N. Carolina* ("*LOWV of N.C.*"), 769 F.3d 224, 244 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015). Laws precluding citizens from voting entirely impose a severe burden on the right to vote, and courts routinely so hold. *Stewart v. Blackwell*, 444 F.3d 843 (6th Cir. 2006); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 709 (N.D. Ohio 2006); *Northeastern Ohio Coalition for the Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012); *One Wisconsin Institute, Inc. v. Thomsen*, No. 15-cv-324, 2016 WL 4059222 (W.D. Wis. July 29, 2016); *Ayers-Schaffner v. DiStefano*, 860 F. Supp. 918, 921 (D.R.I.), *aff'd*, 37 F.3d 726 (1st Cir. 1994).

Recognizing this principle, just last week the U.S. District Court for the Northern District of Florida issued a preliminary injunction extending Florida's voter registration deadline by a full week in light of Hurricane Matthew, "to afford a full opportunity to register for those who may have been affected by Hurricane Matthew's destruction." Order Granting Preliminary Injunction, *Fla. Dem. Party v. Scott*, No. 16-cv-626, Doc. 29 at 2 (N.D. Fla. Oct. 12, 2016). The U.S. District Court for the Northern District of Georgia extended the voter registration deadline in Georgia by one week for the same reason. Order, *Georgia Coalition for The Peoples' Agenda, Inc. et al. v. Deal*, No. 16-cv-219, Doc. 16 at 1 (N.D. Ga. Oct. 14, 2016). Both courts explained that the states' original October 11 deadline disenfranchised voters who were forced to evacuate or whose county registration sites were closed due to the hurricane, which struck a few days before the deadline. *Id.* at 2; Order Granting Temporary Restraining Order, *Fla. Dem. Party v. Scott*, No. 16-cv-626, Doc. 15 at 10 (N.D. Fla. Oct. 10, 2016). As the Florida court explained, Florida's refusal to extend its deadline voluntarily was a "severe burden that is subject to strict scrutiny" and was unconstitutional. *Id.* at 10-11. But even if less searching scrutiny applied, the court explained, Florida's refusal to extend registration "still would be

8

unconstitutional" in light of the lack of any legitimate state interest and the "at best de minimis" burden of "extending voter registration." *Id.* at 11.

The same is true here. Nothing justifies Defendants' refusal to extend the October 17 registration deadline. Indeed, Defendants offered no justification in the letter denying Plaintiffs' request other than the absence of a "statutory provision in the Code of Virginia that allows for extending the voter registration deadline." Compl. Ex. B. But the absence of a state statute obviously does not justify Defendants' violation of the federal Constitution. The State thus has advanced no interest "sufficiently weighty" to justify even a "slight" burden on the right to vote, *Crawford*, 553 U.S. at 191, much less an interest of "compelling importance" that could justify the severe burdens at issue here, *Norman*, 502 U.S. at 280. The slow-downs and crashes that prevented Virginians from registering on October 15-17 are problems of Defendants' own making, and Defendants can have no legitimate interest in forcing Virginia citizens to pay the price—especially a price so great as complete disenfranchisement—for Defendants' error.

Plaintiffs are accordingly likely to prevail on the merits of their claim that Defendants' action violates the fundamental constitutional right to vote.

### B. Defendants' Actions Violate the Equal Protection Clause

Defendants' actions violate the Equal Protection Clause by arbitrarily favoring Virginia citizens who attempted to register to vote before October 15 over those who attempted to register to vote on October 15, 16, or 17. Both sets of Virginians are similarly situated for all material purposes here—both attempted to register to vote within the timeline that was established by Virginia law and in a manner Virginia law permits. Yet through no fault of their own, many voters who tried to register online on October 15, 16, or 17 were unable to do so, either due to significant delays in website responsiveness or complete website failure. Refusing to extend the

October 17 deadline thus would arbitrarily distinguish between these two sets of similarly situated voters.

Such arbitrary distinctions violate the Equal Protection Clause. As the Supreme Court has held: "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000); *see also Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) ("[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction."); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 477 (6th Cir. 2008) ("*LOMV of Ohio*"). "At a minimum," the Supreme Court has held, "equal protection requires 'nonarbitrary treatment of voters.'" *LOMV of Ohio*, 548 F.3d at 477 (quoting *Bush*, 531 U.S. at 105). Thus, for example, the Sixth Circuit held that it would violate the Equal Protection Clause to force voters to "wait between two to twelve hours to vote" because "[v]oting machines were not allocated proportionately to the voting population, causing more severe wait times in some counties than in others." *Id.* at 477-78. "Long wait times caused some voters to leave their polling places without voting in order to attend school, work, or to family responsibilities or because a physical disability prevented them from standing in line." *Id.* at 478. Such allegations "could establish that Ohio's voting system deprives its citizens of the right to vote or severely burdens the exercise of that right depending on where they live in violation of the Equal Protection Clause." *Id.*

It is equally arbitrary—and equally a violation of the Equal Protection Clause—to deprive citizens of the right to vote depending on the day within the registration period that they choose to register. Like a voter's choice to live in a particular county, a voter's choice to register

10

on a particular day within the voter registration period established by state law manifestly is not a rational basis for distinguishing among voters. In short, after granting the right to vote "on equal terms" to all those who sought to register online through October 17, Defendants have now arbitrarily denied the right to vote to some of those individuals based on nothing more than the happenstance of the day they picked to register. *Bush*, 531 U.S. 104. The State, by "later arbitrary and disparate treatment," has not simply "value[d] one person's vote over that of another," *id.* at 105, but deprived one group's vote of any value whatsoever.

Plaintiffs are thus likely to prevail on the merits of their Equal Protection Clause challenge.

### C. Defendants' Actions Violate the Due Process Clause

Refusing to extend the voter registration deadline would also violate the Due Process Clause. "The Due Process Clause is implicated … in the exceptional case where a state's voting system is fundamentally unfair." *LOMV of Ohio*, 548 F.3d at 478; *accord Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978) ("[D]ue process is implicated where the entire election process including as part thereof the state's administrative and judicial corrective process fails on its face to afford fundamental fairness."). Thus, for example, the First Circuit found a Due Process violation where "the Secretary of State, statutorily authorized manager of state elections, advertised, issued, and sanctioned the use of certain ballots which the Rhode Island Supreme Court quashed after the results of the election were in." *Griffin*, 570 F.2d at 1078-79; *see Roe v. State of Ala. By & Through Evans*, 43 F.3d 574, 581 (11th Cir. 1995) (Due Process Clause implicated when the state of Alabama attempted to retroactively change the rules for counting absentee ballots after the election had already taken place).

It is hard to imagine a more "fundamentally unfair" voting practice than announcing that citizens could register to vote online through October 17, denying them the ability to register

11

online between October 15-17, and then refusing to extend the voting registration period to accommodate citizens who relied to their detriment on the state's promises. Needless to say, by the time prospective Virginia voters realized that the delays and website failures meant that they would be unable to register on October 15-17, it was too late for those prospective voters to go back in time and register before the website broke. Accordingly, Plaintiffs are likely to succeed on the merits of their due process claim.[1]

## II.     An Injunction Is Necessary To Prevent Irreparable Harm

The violation of a citizen's right to vote is the quintessential irreparable injury justifying an injunction. "By finding an abridgement to the voters' constitutional right to vote, irreparable harm is presumed and no further showing of injury need be made." *Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000); *see also Obama for Am. v. Husted* ("*OFA*"), 697 F.3d 423, 436 (6th Cir. 2012); *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986). Absent relief here, thousands of Virginians will be disenfranchised as a result of Defendants' refusal to extend the voter registration deadline after the online registration tool malfunctioned and then crashed in the days leading up to the deadline. Plaintiffs Michael and Kathy Kern are among these Virginians facing imminent disenfranchisement. Absent an extension of the registration deadline, they will not be

---

[1] The organizational Plaintiffs, NVMEF and VCET, have Article III standing because they were forced to expend resources on voter registration efforts as a consequence of Defendants' broken website. "[O]rganizations are entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982) (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975)); *see also id.* at 379 (holding that "concrete and demonstrable injury to [an] organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests" and confers standing on the organization in its own right); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) ("Because it will divert resources from its regular activities to educate voters about the requirement of a photo identification and assist voters in obtaining free identification cards, the NAACP established an injury sufficient to confer standing to challenge the statute.").

able to vote in the upcoming presidential election.  In these circumstances, Defendants cannot plausibly contest irreparable harm.

**III.     The Balance of Equities Weighs in Favor of an Injunction**

The balance of equities weighs heavily in favor of an injunction.  Beyond perhaps some minor administrative inconvenience, Defendants will face no legitimate burden if they are required to continue accepting voter registration applications for an additional 72 hours after this Court rules.  Indeed, Defendants are currently continuing to process mailed registrations beyond the October 17 deadline if they were postmarked on October 17.  Compl. Ex. B.

On the other side of the ledger, if the registration deadline is not extended, many voters in a key swing state, including the individual Plaintiffs here, will be disenfranchised in a hotly contested presidential election.  Under these circumstances, the equities strongly favor Plaintiffs.  *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) ("administrative convenience" cannot justify the deprivation of a constitutional right).

Recent events in other states confirm this view of the equities.  Just this month, South Carolina voluntarily extended its registration deadline, including its online registration deadline, to accommodate South Carolinians affected by Hurricane Matthew.  Avery Wilks, *S.C. Voter Registration Deadline Extended Due to Hurricane*, The State, Oct. 6, 2016, http://www.thestate.com/news/politics-government/article106483332.html.  Courts in Georgia and Florida ordered those states likewise to extend their registration deadlines after the storm, and each state has done so.  *See supra*, at pp.8-9.  There is no legitimate reason why Virginia cannot and should not extend its deadline here, particularly when the obstacle to registering was of Defendants' own making.

## IV. An Injunction Is in the Public Interest

The public has a paramount interest in ensuring that every eligible citizen is able to vote. "The public has a strong interest in exercising the fundamental political right to vote." *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *see also LOWV of N.C.*, 769 F.3d at 248.  Many Virginians attempted to register to vote in a timely manner using Defendants' online registration tool, but were prevented from registering through no fault of the their own.  Defendants' website simply could not handle the volume of traffic.  In these circumstances, an injunction giving Virginians an opportunity to participate in the upcoming election would manifestly promote the public interest.

## CONCLUSION

For the foregoing reasons, the Court should grant a preliminary injunction requiring Defendants to take all action necessary to reopen and extend the October 17, 2016 voter registration deadline in Virginia for at least an additional 72 hours after this Court rules, and to take all action necessary to provide notice to the public of the reopening and extension.

Dated:  October 18, 2016

Respectfully submitted,

Ezra D. Rosenberg (*pro hac vice* to be filed)
Arusha Gordon (*pro hac vice* to be filed)
Lawyers' Committee for
  Civil Rights Under Law
1401 New York Avenue NW, Suite 400
Washington, DC 20005
Telephone:    (202) 662-8600
Facsimile:     (202) 783-0857
erosenberg@lawyerscommittee.org
agordon@lawyerscommittee.org

/s/ Michael E. Kientzle
Michael E. Kientzle (VSB # 85487)
John A. Freedman (*pro hac vice* to be filed)
David P. Gersch (*pro hac vice* to be filed)
R. Stanton Jones (*pro hac vice* to be filed)
Elisabeth S. Theodore (*pro hac vice* to be filed)
ARNOLD & PORTER LLP
601 Massachusetts Ave. NW
Washington, DC  20001
Telephone:    (202) 942-5000
Facsimile:     (202) 942-5999
michael.kientzle@aporter.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2016, I caused the foregoing to be electronically filed using the Court's CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

/s/ Michael E. Kientzle
Michael E. Kientzle (VSB # 85487)
ARNOLD & PORTER LLP
601 Massachusetts Ave. NW
Washington, DC  20001
Telephone:     (202) 942-5000
Facsimile:     (202) 942-5999
michael.kientzle@aporter.com

*Counsel for Plaintiffs*